United States District Court
Southern District of Texas
**ENTERED**
October 05, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| STEPHEN "SCOT" CUMMINS, | § | |
| | § | |
| *Plaintiff,* | § | |
| VS. | § | CIVIL ACTION NO. 4:24-cv-4443 |
| | § | |
| RJ REPASKY & RJ REPCO, INC., | § | |
| | § | |
| *Defendants.* | § | |
| | § | |
| | § | |

**ORDER**

Pending before the Court are the parties' cross-motions for summary judgment. Defendants RJ Repasky and RJ Repco, Inc. (collectively, "Defendants") moved for summary judgment on all of Plaintiff Stephen "Scot" Cummins's ("Plaintiff" or "Cummins") claims. (Doc. No. 22). Cummins moved for partial summary judgment against Defendant Repasky. (Doc. No. 23). Each party responded and replied in support of both motions. (Doc. Nos. 25, 26, 28, 30). After considering the motions, the law, and the admissible summary judgment evidence, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment, and **DENIES** Plaintiff's Motion for Summary Judgment.

## I. Factual Background

This case arises out of an employment relationship between Defendant RJ Repco, Inc. ("Repco") and Plaintiff Stephen "Scot" Cummins. Repco is involved in several industries, including an "abrasive products and surface-preparation" business, which it operated under the trade name "The Warehouse Rentals and Supplies ['TWRS']." RJ Repasky ("Repasky"), the owner of Repco, recruited and hired Cummins in 2019. (Doc. No. 22–3 (Repasky Deposition) at 38:24-25, 40:20-41:5). Both parties understood, and it is undisputed, that Cummins was hired to

do two things: grow TWRS's presence in the Gulf Coast region, and help Repco find a buyer for TWRS. (Doc. No. 23–1 (Cummins Declaration) at 2-3; Repasky Deposition at 40:20-41:5).

At some point—February 2019, according to Cummins—the parties reached an oral agreement under which Repco would pay Cummins a "commission" if and when TWRS (or some part thereof) sold. (Doc. No. 23 at 4). The terms, enforceability, and meaning of this agreement are hotly disputed. While Defendants consistently refer to the oral agreement as "alleged," they do not seem to dispute that some agreement was reached, only whether that agreement is enforceable. (*See generally* Doc. Nos. 22, 25, 30).

It is undisputed that in February of 2019 the parties were negotiating a written employment agreement. (Doc. No. 22–5 (email from Cummins to Repasky)). That Employment Agreement, (Doc. No. 22–6), was never signed. Nevertheless, Cummins began working for Repco in March of 2019. Then, on November 24, 2020, Repasky sent Cummins the following text:

> Just so that you have it in writing. Any sale over 10,000,000.00 I will give you 20% of the overage. So if it is sold at 12mil. Outside of the sale I will give you 400,000.00 commission.
>
> As per the bank I will have to pay off about 9.4 mil in debt but that will not affect the sale price commission to you.
>
> And to top it off if this can be done before December 31, I will give you a 100,000.00 bonus in addition.

(Doc. No. 26–2 at 202). Cummins asserts that this text message confirmed the prior oral agreement that he (Cummins) would be owed a commission upon the sale of TWRS. As stated above, the parties hotly dispute the meaning of the term "[a]ny sale" and the enforceability of this agreement.

On November 8, 2021, Cummins and Repco signed and executed a Termination of Employment Agreement ("TEA"). (Doc. No. 22–9). The TEA terminated all of the legal rights of both parties under the prior employment agreement. (*Id.* at 2). Section 7 of that agreement provides: "**<u>Entire Agreement</u>.** This Agreement constitutes the entire agreement and understanding

of the Parties hereto with respect to the subject matter hereof and supersedes all prior agreements and undertakings, both written and oral, with respect to the subject matter hereof." (*Id.*). On the same day the TEA was signed—November 8, 2021—RJ Repco sold the entirety of TWRS to KLH—a private equity company and not a party to this action—for $25 million. (Doc. No. 23–9 (Repco-KLH Asset Purchase Agreement)).

Following the conclusion of the sale of TWRS to KLH, Cummins reached out to Repasky to ask about payment of the commission. (Doc. No. 23–10 (e-mails between Cummins and Repasky)). Specifically, Cummins "was inquiring if there is any money set aside for the recent transaction." (*Id.* at 2). Repasky declined to pay, and Cummins filed this lawsuit for breach of contract. (Doc. No. 1–2 (original petition) at 10). The parties have now cross-moved for summary judgment.

## II. Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all

reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

## III. Analysis

When parties file cross-motions for summary judgment, the Court "review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Colony Ins. Co. v. First Mercury Ins. Co.*, 88 F.4th 1100, 1106–07 (5th Cir. 2023). The Court begins with Defendants' Motion. The parties agree that Texas law governs the substantive contract issues in this case.

### A. Defendants' Motion for Summary Judgment

Defendants present two independent grounds on which the Court could grant summary judgment in their favor. First, Defendants argue that the commission agreement is unenforceable because its terms are insufficiently definite. Second, Defendants argue that the TEA extinguished any existing obligations. The Court begins with Defendants' second argument.

#### 1. The termination of employment agreement

Defendants argue that summary judgment is warranted because, whether or not the commission agreement was originally enforceable, the TEA's integration clause extinguishes any obligations that Defendants may have had under that commission agreement.

Under Texas law, integration or merger clauses are given effect through the parol evidence rule. *See Hubacek v. Ennis State Bank*, 317 S.W.2d 30, 31 (Tex. 1958); *Silverthorne Seismic, LLC v. Sterling Seismic Servs., LTD.*, 2021 WL 11728206 at *4 (S.D. Tex. 2021). The parol evidence rule "is not a rule of evidence at all, but a rule of substantive law." *Hubacek*, 317 S.W.2d at 31. "When parties have entered into a valid, written, integrated contract, the parol evidence rule precludes enforcement of any prior or contemporaneous agreement that addresses the same subject matter and is inconsistent with the written contract." *West v. Quintanilla*, 573 S.W.3d 237, 244 (Tex. 2019). A contract is integrated where it is "final and complete and expressly 'supersedes' any prior agreements between the parties 'to the extent they relate in any way to the subject matter hereof.'" *Id.* (quoting *Integrated Contract*, BLACK'S LAW DICTIONARY (10th ed. 2014) (holding that a contract was integrated in light of its "Entire Agreement" provision). The parol evidence rule precludes enforcement of a prior or contemporaneous agreement "regardless of whether the alleged agreement is oral or written." *Id.* at 243; *See also Hubacek*, 317 S.W.2d at 31 ("The parol evidence rule countenances no such distinction; it precludes enforcement of inconsistent agreements, whether written or oral.")

The parol evidence rule "does not preclude enforcement of an agreement that is 'collateral' to and not inconsistent with" the written, integrated contract. *Id.* at 245. "A collateral agreement is one that is supported by separate consideration and that the parties 'might naturally' make separately under the circumstances." *Id.* (quoting *Hubacek*, 317 S.W.2d at 32). Agreements that are related to the written, integrated contract may still be collateral where they "address[] completely different exchanges and obligations." *Id.*

The court in *Silverthorne* interpreted this language from *West* as creating two distinct requirements for an agreement to fall under the collateral agreement exception. *Silverthorne*, 2021

WL 11728206 at *4. First, "the agreement must not be inconsistent with the integrated contract." *Id.* Second, "it must also either be (1) made for separate consideration; or (2) 'such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract.'"[1] *Id.* (quoting *Hubacek*, 317 S.W.2d at 32).

The parties here do not dispute that the November 8, 2021 TEA is a valid, written, integrated contract. Instead, the dispute is focused on whether the TEA and the commission agreement address the same subject matter and are inconsistent with one another. In other words, whether the commission agreement falls under the "collateral agreement exception" outlined in *Hubacek* and *West*.

In this case, the TEA states both that: "the Employment Agreement is hereby terminated as of the Effective Date by mutual written consent," and that: "[t]his Agreement constitutes the entire agreement and understanding of the Parties hereto with respect to the subject matter hereof and supersedes all prior agreements and undertakings, both written and oral, with respect to the subject matter hereof." (TEA at 2).

The parties agree that they never signed an employment agreement. (Doc. No. 22–6). That being the case, the "Employment Agreement" referenced in the TEA necessarily encompassed the oral employment agreement under which the parties were both performing throughout the term of Cummins' employment with Repco. Additionally, both parties understood, and it is undisputed, that Cummins' employment involved two things: building and growing TWRS's presence in the

---

1 There is some confusion in the Texas case law as to whether both requirements must be present for an agreement to fall under the collateral agreement exception, or only one. *See Silverthorne*, 2021 WL 11728206 at n. 4 ("In *West v. Quintanilla*, the Supreme Court of Texas wrote that a collateral agreement must be both supported by separate consideration *and* one that the parties might naturally make separately . . . . *Hubacek*'s discussion . . . uses 'or' instead of 'and.'"). For purposes of this motion, this Court follows the *Silverthorne* court in adopting the disjunctive "or," as it is more favorable to the non-movant.

Gulf Coast region, and helping Repco find a buyer for TWRS. (Doc. No. 23–1 (Cummins Declaration) at 2-3; Repasky Deposition at 40:20-41:5). Indeed, Repasky first approached Cummins only to help find a buyer for TWRS; it was Cummins who suggested first expanding the business into the Gulf Coast region because "by opening up Gulf Coast operations, Repasky could add millions of dollars of value to RJ Repco's surface-prep operations." (Cummins Declaration at 2).

That being the case, the commission agreement fails the first prong of the collateral agreement exception: if the parties did, in fact, reach an enforceable agreement under which Cummins was entitled to a sales commission, that agreement was part and parcel of Cummins' employment agreement. The TEA makes clear that it terminates the employment agreement, and that termination constitutes the "entire agreement and understanding of the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and undertakings, both written and oral, with respect to the subject matter hereof." (TEA at 2). Any agreement under which Repco owed Cummins a continuing duty to pay a commission is inconsistent with the unambiguous terms of the TEA.

To be sure, the Supreme Court of Texas held in *West* that an oral agreement to pay additional consideration for the purchase of the same assets addressed in the written agreement was consistent with that written agreement. *West*, 573 S.W.3d at 246–47. It may well be the case here—as in *West*—that the commission agreement was consistent with the employment agreement, even though the commission agreement promised additional consideration for the performance of job duties already contemplated in the employment agreement. Nevertheless, the question before the Court here is different from the question in *West*. Here, the written TEA expressly terminates all existing obligations under the employment agreement, and "all prior agreements and

undertakings, both written and oral, with respect to the subject matter hereof." (TEA at 2). That being the case, even if—perhaps especially if—the commission agreement was consistent with the employment agreement, it is inconsistent with the TEA.

Construction of the integration/merger clause of the TEA—and application of the parol evidence rule thereto—establishes as a matter of law that Defendants owed Cummins no obligations beyond those outlined in the TEA.[2] Cummins has not pointed the Court to any specific facts that would change this legal analysis. *See Celotex*, 477 U.S. at 324.

For this reason, the Court need not reach Defendants' argument that the commission agreement is too indefinite to enforce. Defendants' Motion for Summary Judgment is granted, and this case is dismissed with prejudice.

**B. Plaintiff's Motion for Summary Judgment**

As outlined above, Defendants have established as a matter of law that they had no duty to pay Cummins under the commission agreement. As such, Cummins is unable to recover on his breach of contract claim, and Plaintiff's Motion for Summary Judgment is denied.

---

[2] As discussed above, the parol evidence rule operates in Texas to give effect to merger clauses such as the one contained in the TEA. *See Hubacek v. Ennis State Bank*, 317 S.W.2d 30, 31 (Tex. 1958); *Silverthorne Seismic, LLC v. Sterling Seismic Servs., LTD.*, 2021 WL 11728206 at *4 (S.D. Tex. 2021). That being the case, if the unambiguous language of the merger clause was not enough—under standard contract interpretation principles—to preclude enforcement of the alleged commission agreement, the parol evidence rule resolves any doubt.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. No. 22), **DENIES** Plaintiff's Motion for Summary Judgment (Doc. No. 23), and dismisses this case with prejudice. All other pending motions are **DENIED** as moot.

It is so ordered.

Signed on this the 5th day of October 2026.

Andrew S. Hanen
United States District Judge